IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Clarence Ganaway, | Case No. 1:09 CV 158 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | |
| | JUDGE JACK ZOUHARY |
| Warden of the Marion Correctional Institution, | |
| Respondent. | |

**INTRODUCTION**

*Pro se* Petitioner Clarence Ganaway, a prisoner in state custody at the Marion Correctional Institution, filed a Petition for a Writ of Habeas Corpus (Doc. Nos. 1, 13).  Respondent, Warden of the Marion Correctional Institution, filed a Return of Writ (Doc. No. 10).  Petitioner filed numerous motions, supplements, and letters in support of his Petition (Doc. Nos. 8, 9, 13, 14, 15, 16, 17, 19, 21, 22, 23, 24, 25, 28, 30, 32, 33, 34, 36, 37) alleging his conviction and detention violate the Fifth, Sixth, Eighth, and Fourteenth Amendments.  This Court has jurisdiction under 28 U.S.C. § 2254(a).

The case was referred to Magistrate Judge Limbert for a Report and Recommendation ("R&R") pursuant to Local Rule 72.2.  The Magistrate recommended the Court dismiss the Petition (Doc. No. 35).

Petitioner filed an Objection (Doc. No. 38) to the R&R.  Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings and adopts the recommendation to dismiss the Petition.

**FACTUAL AND PROCEDURAL HISTORY**

The facts and procedural history of Petitioner's trial were recounted by the Ohio court of

appeals' review of Petitioner's first direct appeal.  Petitioner has the burden of rebutting a

presumption of correctness by submitting clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).  These facts are treated as binding.

> Ganaway was indicted on the following charges: aggravated robbery, a felony
> of the first degree, with one- and three-year firearm specifications, a repeat violent
> offender specification and a notice of a prior conviction; failure to comply with the
> order or signal of a police officer, a felony of the third degree; possessing criminal
> tools, a felony of the fifth degree; having a weapon while under disability, a felony of
> the third degree; and carrying a concealed weapon, a felony of the fourth degree.
>
> The case proceeded to a jury trial.  At the conclusion of the State's case, the
> defense made a Crim.R. 29 motion for acquittal, which was granted as to the repeat
> violent offender specification, but denied as to the remaining charges and
> specifications. The jury found Ganaway guilty on the remaining charges, and the court
> sentenced him as follows: five years for the aggravated robbery, to be served
> consecutive to the three-year gun specification; five years for the failure to comply
> with the order or signal of a police officer; one year each for possessing criminal tools,
> having a weapon while under disability and carrying a concealed weapon. The
> sentences were ordered to run consecutively; Ganaway was therefore sentenced to a
> total of 16 years. That sentence included maximum sentences for failure to comply
> with the order or signal of a police officer and possessing criminal tools, and the
> minimum sentence for having a weapon while under disability. The sentences for
> aggravated robbery and carrying a concealed weapon were more than the minimum
> but less than the maximum. See R.C. 2929.14(A). The three-year-consecutive sentence
> for the firearm specification was mandatory. See R.C. 2929.14(D)(1)(a)(i).
>
> The following facts were revealed through the trial testimony. The victim,
> Marcus Jacobs, worked as a service technician for B and H Laundry Coin Service ("B
> and H Laundry"). Jacobs' job included servicing and collecting the proceeds from
> coin-operated laundry machines located in rental properties in the Cleveland area.
> Jacobs traveled to the different sites in a service van equipped with GPS.
>
> On the date of the incident, Jacobs arrived at an apartment complex in Shaker
> Heights at approximately 1:30 p.m. for a scheduled service stop. Jacobs testified that
> upon arriving at the complex, he pulled into the driveway, put the van in park and
> cracked open his door. According to Jacobs, while the van was running, he reached
> down between the front seats to retrieve some paperwork, and as he did, he felt a hand

2

grab his shoulder and heard a voice say, "get the f--- out of the truck."  When he looked up, Jacobs saw a masked man holding a gun, the barrel of which was in his face. Jacobs described the gun as being silver and having a large barrel, and from his personal knowledge of guns, he believed it to be a 9-millimeter gun.

Jacobs testified that he followed the gunman's command and got out of the van. When he exited the van, the gunman let go of Jacobs' shoulder, and Jacobs ran to the front of the apartment building. Jacobs saw the gunman standing at the back of the van. Jacobs called 9-1-1 on his cell phone, and while on the phone with the dispatcher, he heard squealing wheels and saw the van being driven out of the driveway.

The police and B and H Laundry tracked the van through the GPS system. The system's activity report showed that after Jacobs' stop in Shaker Heights, the van registered as being in Cleveland, Garfield Heights and Parma, and as traveling at high rates of speed on city streets.  The activity report further showed that between 1:40 p.m. (when the van registered as being at the Shaker Heights location where Jacobs testified the robbery occurred) and 3:01 p.m., the van registered as being parked on only two occasions, each time for two minutes. Parked meant that the van was either placed in park via the gearshift mechanism or had been at rest for two minutes.

Through the GPS system, the police were able to respond to the van's location. After the police observed the van, a chase ensued, with 15 police cars attempting to stop the van. The chase ended when the van's driver, later identified as Ganaway, ran a red light and crashed into a telephone pole. The chase, which lasted approximately six minutes and covered three to four miles, was high speed, went through a school and construction zone, and involved one of the police cruisers being hit by an unrelated vehicle.

According to the police, after the van crashed, the driver exited the van wearing a yellow raincoat and carrying a silver 9-millimeter gun, and started to run. One officer testified that as he pulled his police cruiser up to the driver in an attempt to block his path, he accidentally "clipped" him with his cruiser, causing the driver and the gun to fall to the ground. The driver was apprehended and the gun was recovered. At the time he was apprehended, the driver was missing a shoe; the matching shoe was later recovered from the van. The gun, which was determined to be operable, was loaded with eight rounds, and a lipstick holder recovered from the driver's pocket contained an additional eight rounds. A knit hat with two eyeholes and approximately $90 in coins were also recovered from the driver.

Jacobs identified the recovered hat and gun as the same hat and gun the gunman had when he encountered him in Shaker Heights. Jacobs also identified the yellow raincoat as his.

3

*State v. Ganaway*, 2008 WL 885836, at \*1–2 (Ohio Ct. App. 2008).

Additionally, the R&R recounted the long procedural history as it pertains to Petitioner's initial filing of this Petition and the numerous supplemental and responsive filings that followed (Doc. No. 35, pp. 1–4).  After reviewing the R&R and the numerous docketed filings, this Court adopts the R&R's procedural history in its entirety.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") significantly changed the manner in which federal courts review habeas petitions.  *See* 28 U.S.C. § 2254(d), (e).  Pursuant to the amended provisions of Section 2254(d), a writ of habeas corpus may not be granted unless the state court proceedings: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Pursuant to subsection (1), a writ of habeas corpus may only be granted if the court concludes that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In reviewing the petition to determine, pursuant to subsection (2), whether the decision was based on an unreasonable determination of facts, we presume correct the factual findings made by the state court.  28 U.S.C. § 2254(e)(1).  The petitioner may rebut the presumption of correctness only with clear and convincing evidence.  *Id.*

## DISCUSSION

Petitioner has filed two different habeas petitions.  The first was filed on an outdated AO 241 form (Section 2254 State Prisoner Habeas Petition Form) and appeared to assert four grounds for

4

relief: (1) ineffective assistance of counsel under the Sixth Amendment; (2) violation of the privilege against self-incrimination; (3) double jeopardy for the court's consideration of his prior conviction thirty years ago; and (4) failure of the prosecution to turn over evidence (Doc. No. 1, p. 5). The Petition referenced a thirty-nine page memorandum for all relevant facts and argument. However, no memorandum was attached.

The second Petition, filed eight months later with the Court's permission, on a current AO 241 form, included the referenced thirty-nine page memorandum. However, instead of clearly describing each ground upon which he was seeking relief, as required in the AO 241 form, Petitioner merely wrote he was challenging his conviction and detention based on the Fifth, Sixth, Eighth, and Fourteenth Amendments, referencing the attached memorandum (Doc. No. 13). Petitioner's Objection to the R&R is similarly unclear, comprising sixteen pages that fail to identify specific objections and is filled with unrelated case citations, various confusing notes, and margin comments (Doc. No. 38).

Because Petitioner is *pro se*, his pleadings are to be read liberally and the court should review the claims if described reasonably clearly. That, however, is not what happened here. Both the Magistrate and the Respondent struggled to identify Petitioner's claims and understand the necessary facts underpinning those claims (Doc. Nos. 10, 20, 29). Petitioner's numerous motions, supplements, and letters, mentioned above, only further confused the matter.

Despite the confusion, the Magistrate made multiple attempts to assist and guide Petitioner in filing a complete and coherent Section 2254 petition. Specifically, the Magistrate issued an Order requiring Petitioner to file the memorandum that was not included with the original Petition (Doc. No. 11); issued an Order requiring Petitioner to clarify the grounds for relief raised in the two Petitions

(Doc. No. 29); granted several extensions to allow Petitioner to file amended Petitions (Doc. Nos. 12, 26, 29); and directed the clerk's office to mail Petitioner a new copy of the AO 241 form in order to give him another chance at presenting his arguments (Doc. Entry, 6/30/2010). The Magistrate also warned Petitioner twice that his Petition would be dismissed if he failed to provide clearly numbered, identifiable claims for relief (Doc. Nos. 26, 29).

Nonetheless, despite the Magistrate's assistance, Petitioner failed to correct the confusing and unclear filings. He failed to follow multiple court orders, and instead his filings became progressively more incoherent, most notably Petitioner's filing of a "Notice of Litigation Education Genocide" (Doc. No. 34). Further review of the instant Petition would set a precedent that would unnecessarily burden the federal courts by encouraging petitioners to throw as much proverbial mud against the wall as possible with the hope the court will sift through to see what sticks. *Middleworth v. Ohio*, 2008 WL 2902059, at *4 (N.D. Ohio 2008).

Furthermore, this Court attempted to discern Petitioner's constitutional claims, with limited success. Comparing Petitioner's habeas claims with the points of error argued in Petitioner's direct appeal, it appears Petitioner is simply reasserting the same arguments presented on direct appeal. With respect to his ineffective assistance of counsel claim, the Ohio appeals court properly found this argument untimely and unsupported by the record. *State v. Ganaway*, 2008 WL 885836, at *3–4. Petitioner's claim that his privilege against self-incrimination was violated by receiving a harsher sentence at trial than he would have received in a plea bargain was considered by the appeals court, which found no evidence of vindictiveness. *Id.* at *4–5. Petitioner's double jeopardy claim also fails; while Petitioner was indicted and tried on a repeat violent offender specification based on his thirty-year-prior conviction, the trial court granted a Criminal Rule 29 motion for acquittal on this

specification. *Id.* at \*1.  Finally, Petitioner's claim that the prosecution failed to turn over evidence fails because it does not appear from the record that Petitioner fairly presented this issue to the state courts on direct appeal, nor is this Court able to discern any factual basis for this claim from Petitioner's many filings.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

### CONCLUSION

After conducting a *de novo* review, this Court finds Petitioner has failed to follow prior court orders to file a clear, amended petition with separate, numbered constitutional grounds for relief.  To the extent this Court can decipher Petitioner's grounds for relief in his prior filings and his attempted objections to the R&R, those objections are not well taken.  Accordingly, the Petition for Writ of Habeas Corpus is dismissed.  Furthermore, under 28 U.S.C. §§ 1915(a) and 2253(c), this Court certifies that an appeal of this action could not be taken in good faith and that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Therefore, this Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

December 22, 2010

7